## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| GEORGE N. NASKARIS,<br><br>                      Plaintiff,<br><br>      -against-<br><br>JOHN DOE 1, JOHN DOE 2, JOHN DOE 3,<br>PAVLOS K. SARAKIS, and SARAKIS &<br>ASSOCIATES LAW FIRM,<br><br>                  Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Dr. George N. Naskaris ("Plaintiff" or "Dr. Naskaris"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against John Doe 1 ("Whistleblower A"), John Doe 2 ("Whistleblower B"), John Doe 3 ("Whistleblower C"), Pavlos K. Sarakis ("Sarakis"), and Pavlos K. Sarakis & Associates Law Firm (the "Sarakis Law Firm" and, collectively, the "Defendants") for breach of contract, breach of the implied covenant of good faith and fair dealing, and/or unjust enrichment.

2.      Dr. Naskaris organized and effectuated a whistleblower group to bring Novartis AG, Novartis Hellas S.A.C.I., and related entities (collectively "Novartis") to justice for their corruption, bribery, and violations of the Foreign Corrupt Practices Act ("FCPA").

3.      Between 2014 and 2016 Dr. Naskaris recruited attorneys and whistleblowers to build and bring a whistleblower action to the U.S. Securities and Exchange Commission ("SEC") against Novartis. As the whistleblower group grew, the various parties entered into a series of

contracts. The earliest of these contracts was dated November 5, 2014. The latest of the contracts was dated May 13, 2016.

4.    The whistleblower group contracts stated the parties to the contract, the roles of the parties, and the agreed upon split of any potential whistleblower award to each of the parties that could be paid based upon the work of the whistleblower group.

5.    On August 12, 2016, the whistleblower group completed and filed their complaint form with the SEC's tips, complaints, and referrals (TCRs) system. On June 25, 2020, the SEC and DOJ announced massive settlements of over $300 million to resolve FCPA violations against Novartis. On August 4, 2023, the SEC announced it was providing $104 million as the whistleblower award (the "Whistleblower Award") marking it the fourth largest whistleblower award of all time.

6.    However, to date, and after numerous attempts to reach out to Defendants, the Defendants never paid Dr. Naskaris his duly owed portion of the Whistleblower Award.

7.    For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, and/or unjust enrichment and to recover damages resulting from the Defendants' actions.

## JURISDICTION AND VENUE

7.    This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 (d)(2) as complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.

8.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under

traditional notions of fair play and substantial justice. All parties to the contract agreed to allow this Court personal jurisdiction by executing a contract containing a choice of law and choice of venue provision for the District of Columbia.

9.      Venue is proper in this District under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Defendants explicitly agreed to the District of Columbia as the proper venue for disputes arising under the contract.

## **PARTIES**

10.     Plaintiff Dr. George Naskaris was the founding member of the whistleblower group and a named party and/or signatory to the final contract between the parties. Dr. Naskaris is the founder and President of New York businesses Greystone Ventures Group, Inc. ("Greystone Ventures") and Greystone Healthcare Group, Inc. ("Greystone Healthcare").

11.     Defendant John Doe 1 ("Whistleblower A") was a member of the whistleblower group, a named party and/or signatory to the final contract between the parties, and a recipient of the Whistleblower Award. Whistleblower A is located in Greece.

12.     Defendant John Doe 2 ("Whistleblower B") was a member of the whistleblower group, a named party and/or signatory to the final contract between the parties, and a recipient of the Whistleblower Award. Whistleblower B is located in Greece.

13.     Defendant John Doe 1 ("Whistleblower C") was a member of the whistleblower group, a named party and/or signatory to the final contract between the parties, and a recipient of the Whistleblower Award. Whistleblower C is located in Greece.

14.     Defendant Pavlos K. Sarakis ("Sarakis") is the managing partner of the Sarakis firm. Sarakis was a member of the whistleblower group, a named party and/or signatory to the final contract between the parties, and a recipient of the Whistleblower Award. Sarakis is located

in Greece.

15.     Defendant Pavlos K. Sarakis & Associates Law Firm ("Sarakis Firm") is a law firm based in Athens, Greece. The Sarakis Firm was a member of the whistleblower group, a named party and/or signatory to the final contract between the parties, and a recipient of the Whistleblower Award. The Sarakis Firm is located in Greece.

## FURTHER SUBSTANTIVE ALLEGATIONS

16.     Dr. Naskaris has extensive experience doing business in the pharmaceutical, hospital, and healthcare industry in Europe. Though the years, Dr. Naskaris came to learn of large-scale corruption and bribery between the pharmaceutical companies, especially Novartis, and the government in Greece.

17.     In 2014, Dr. Naskaris decided to act, sought a Greek attorney who could help him take action, and contacted Pavlos K. Sarakis ("Sarakis") of Pavlos K. Sarakis & Associates Law Firm (the "Sarakis Law Firm").

18.     On November 25, 2014, Dr. Naskaris, on behalf of Greystone Ventures,[1] and Mr. Sarakis, on behalf of the Sarakis Law Firm, entered into a contract to investigate and develop a legal action concerning Greek pharmaceutical corruption and bribery practices, with Novartis as the main target.[2]

19.     The contract contained an Action Plan, confidentiality provisions, and a Non-circumvention clause that prevented either party from making agreements or taking unilateral action concerning the contemplated matters without the approval of the other.

20.     Together, Dr. Naskaris and Mr. Sarakis were able to identify and bring

---

[1]     Dr. Naskaris is the founder and President of Greystone Ventures Group, Inc. ("Greystone Ventures") and Greystone Healthcare Group, Inc. ("Greystone Healthcare").
[2]     The November 25, 2014 contract is attached hereto as Exhibit 1.

Whistleblower A on board to help build their case.

21.     During this same time period, Dr. Naskaris also introduced Mr. Sarakis to Andrew M. Beato ("Beato"), a partner at Stein Mitchell Cipollone Beato & Missner LLP (n/k/a Stein Mitchell Beato & Missner LLP ("Stein Mitchell")), to serve as U.S. counsel and to help them bring their FCPA whistleblower case before the SEC.

22.     On January 21, 2015, Dr. Naskaris, on behalf of Greystone Healthcare, Mr. Sarakis, on behalf of the Sarakis Law Firm, Mr. Beato, on behalf of Stein Mitchell, and Whistleblower A, as Executive, entered into a contract concerning the collective prosecution of an FCPA whistleblower action against Novartis.[3]

23.     Therein, Dr. Naskaris and Whistleblower A codified their "Clients' Agreement" as an agreement independent of legal representation, that the clients would split equally any contingent award that resulted from the contemplated whistleblower action, after attorneys' fees.

24.     On July 8, 2015, Dr. Naskaris, on behalf of Greystone Healthcare, Mr. Sarakis, on behalf of the Sarakis Law Firm, Mr. Beato, on behalf of Stein Mitchell, and Whistleblower A, as Executive, agreed to an extension of the exclusive period defined in the January 21, 2015 contract, but otherwise affirmed the other terms and conditions of the agreement—including, *inter alia*, the Clients' Agreement.[4]

25.     Thereafter, the whistleblower group continued to work together to build their FCPA case against Novartis.

26.     As the founder and leader of the whistleblower group, Dr. Naskaris was essential in the inception and the development of this Novartis FCPA action. Through his knowledge and

---

[3]     The January 21, 2015 contract is attached hereto as Exhibit 2.
[4]     The July 8, 2015 contract is attached hereto as Exhibit 3.

expertise in the European healthcare industry, Dr. Naskaris oversaw the identification and recruitment of additional primary witnesses to help fortify the factual allegations of the case with first-hand knowledge and documents, including Whistleblowers A, B, and C.

27.    On May 4, 2016, after the group successfully onboarded Whistleblower B, Dr. Naskaris, on behalf of Greystone Healthcare, Mr. Sarakis, on behalf of the Sarakis Law Firm, Mr. Beato, on behalf of Stein Mitchell, Whistleblower A, and Whistleblower B entered into a renewed agreement to contractually incorporate Whistleblower B into their party.[5]

28.    The new agreement still contained an independent Clients' Agreement on fee sharing, but defined everyone's share in terms of a total percentage of the potential whistleblower award so that:

    a.  Stein Mitchell would receive 35%;
    b.  The Sarakis Law Firm would receive 24%;
    c.  Dr. Naskaris would receive 15%;
    d.  Whistleblower A would receive 13%; and
    e.  Whistleblower B would receive 13%.

29.    Similarly, on May 13, 2016, after the group successfully onboarded Whistleblower C, Dr. Naskaris, on behalf of Greystone Healthcare, Mr. Sarakis, on behalf of the Sarakis Law Firm, Mr. Beato, on behalf of Stein Mitchell, Whistleblower A, Whistleblower B, and Whistleblower C entered into an updated agreement to contractually incorporate Whistleblower C into their party.[6]

30.    The new agreement still contained an independent Clients' Agreement on fee sharing and defined everyone's share in terms of a total percentage of the potential whistleblower award, but altered the split so that:

    a.  Stein Mitchell would receive 35%;

---

[5]    The May 4, 2016 contract is attached hereto as Exhibit 4.
[6]    The May 13, 2016 contract is attached hereto as Exhibit 5.

      b. The Sarakis Law Firm would receive 24%;

      c. Dr. Naskaris would receive 15%;

      d. Whistleblower A would receive 8%;

      e. Whistleblower B would receive 10%; and

      f. Whistleblower C would receive 8%

31.     For the next few months, the whistleblower group continued to work together and develop the Novartis FCPA case. Dr. Naskaris served and upheld his position as a consultant to the case and helped coordinate the group's efforts.

32.     On August 12, 2016, Stein Mitchell completed and filed the whistleblower group's TCR with the SEC that eventually led the successful prosecution of the Novartis FCPA actions and the payment of the Whistleblower Award.

33.     Unfortunately, shortly after filing the TCR, Stein Mitchell reached irreconcilable differences with Whistleblowers A, B, and C concerning legal strategy and decided to withdraw from the case and forfeit any portion of the Whistleblower Award. However, since the clients' agreement to split the Whistleblower Award was made independent of Stein Mitchell's legal representation, the group fee split was still in effect.

34.     Following Stein Mitchell's withdrawal, Dr. Naskaris made it clear to the remaining whistleblower group that he was not withdrawing from the case.

35.     Thereafter, Defendants hired new U.S. counsel, Kohn, Kohn & Colapinto LLP ("KKC"), without consulting or notifying Dr. Naskaris and continued to prosecute the whistleblower group's Novartis FCPA action without Dr. Naskaris.

36.     On June 25, 2020, the SEC and DOJ announced massive settlements of $345 million to resolve the Novartis FCPA matters.

37.     That same day, KKC published an article on their website identifying themselves as United States counsel for the whistleblower group.

38.     On August 4, 2023, the SEC announced it was providing $104 million as the Whistleblower Award.

39.     After the announcement of the Whistleblower Award, Dr. Naskaris made numerous efforts to reach out and collect his duly owed portion of the Whistleblower Award, but to no avail.

40.     On July 23, 2024, counsel for Plaintiff sent a letter to Messrs. Stephen Kohn and Sarakis seeking to resolve this matter without judicial intervention.[7] That letter was ignored.

41.     On August 22, 2024, counsel for Plaintiff sent an email communication to Messrs. Kohn and Sarakis once again seeking to resolve this matter without judicial intervention.[8] That communication was also ignored.

42.     Now Plaintiff brings this action seeking damages resulting from Defendants' breach of contract, breach of the implied covenant of good faith and fair dealing, and/or unjust enrichment.

## COUNT I

### Against Defendants for Breach of Contract

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     A valid written contract exists between Plaintiff and Defendants.

45.     Defendants had a duty to split the Whistleblower award in accordance with the May 13, 2016 Contract.

46.     Defendants materially breached that duty by failing to pay Plaintiff his portion of the Whistleblower Award.

---

[7]     The May July 23, 2024 letter is attached hereto as Exhibit 6.
[8]     The May August 22, 2024 email is attached hereto as Exhibit 7.

47.    This failure of payment constitutes a material breach that goes to the essence of the agreement between the parties and is so serious as to destroy the essential object of the agreement.

48.    Plaintiff was damaged millions of dollars by not receiving his portion of the $104 million Whistleblower Award.

## **COUNT II**

### **Against Defendants for Breach of Implied Covenant of Good Faith and Fair Dealing**

49.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.    Every contract includes an implied covenant of good faith and fair dealing.

51.    Defendants breached the implied covenant of good faith and fair dealing by entering into subsequent whistleblower contracts without Plaintiff and failing to pay Plaintiff his duly owed portion of the Whistleblower Award.

52.    These actions by Defendants were done in bad faith because they were performed to violate the agreed Whistleblower fee split of the May 13, 2016 Contract.

53.    This breach did not fully materialize until Defendants refused to pay Plaintiff his duly owed portion of the Whistleblower Award in 2023.

54.    Plaintiff was damaged millions of dollars by not receiving his portion of the $104 million Whistleblower Award.

## **COUNT III**

### **Against Defendants Unjust Enrichment**

55.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56.    In the alternative, if the jury should find that no contract existed between the Plaintiff and Defendants at the time of the Whistleblower Award, Plaintiff brings a claim for unjust enrichment against the Defendants.

57.    Plaintiff conferred a benefit upon Defendants by founding and assembling the whistleblower group, identifying and onboarding whistleblowers, finding, introducing, and retaining U.S. counsel for the whistleblower group that filed the TCR complaint which led to the Whistleblower Award, and providing industry expertise and contributing to the development of the Novartis TCR complaint.

58.    Defendants retained the benefit of these actions by keeping the Whistleblower Award for themselves.

59.    Defendants ignored and/or denied Plaintiff's numerous attempts to collect his duly owed portion of the Whistleblower Award.

60.    Defendants' retention of the Whistleblower Award and failure to pay Plaintiff his portion duly owed is unjust. No whistleblower group would exist, but for the actions of Plaintiff. No FCPA TCR complaint would have been filed against Novartis, but for the actions of Plaintiff. Defendants would never have received any whistleblower award money, but for the actions of Plaintiff.

61.    Therefore, as a result of Defendants' benefit at Plaintiff's expense, Defendants have been unjustly enriched.

62.    Accordingly, equity and good conscience require that Defendants pay restitution in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Entering judgment against Defendants for breach of contract;

B.      Entering judgement against Defendants for breach of the implied warranty of good faith and fair dealing;

C.      Finding that Defendants were unjustly enriched at the expense of Plaintiff;

D.      Awarding Plaintiff all of their compensatory damages and/or restitution to be proved at trial which Plaintiff has suffered as a result of Defendants' breaches of contract, breaches of the implied covenant of good faith and fair dealing, and/or unjust enrichment, plus pre-judgment and post-judgment interest and coasts;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and/or

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 6, 2024                    Respectfully submitted,

**OF COUNSEL**                                     **LOCAL COUNSEL**

**HACH ROSE SCHIRRIPA**            */s/ Lawrence A. Katz, Esq_____*
**& CHEVERIE, LLP**                          LAWRENCE A. KATZ
                                                             DC Bar ID:  NJ053
 */s/  Frank R. Schirripa_____*          Lento Law Group P.C.
Frank R. Schirripa                              1814 RT 70 STE 321
John W. Baylet                                  Cherry Hill , NJ 08003
112 Madison Avenue, 10th Floor          P: (856) 652-2000  EXT 497
New York, New York 10016                 **[DIAL EXTENSION DURING**
Tel: 212-213-8311                              **MESSAGE]**
fschirripa@hrsclaw.com                       F: (856) 375-1010
jbaylet@hrsclaw.com                          lakatz@lentolawgroup.com

*Attorneys for Plaintiff*                         *Local Counsel for Plaintiff*