# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

GEORGE N. NASKARIS,

                              Plaintiff,          Case No 1:24-cv-03401

          -against-

JOHN DOE 1, JOHN DOE 2, JOHN DOE 3,
PAVLOS K. SARAKIS, and SARAKIS &
ASSOCIATES LAW FIRM,

                              Defendants.

# PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANTS PAVLOS K. SARAKIS' AND THE PAVLOS K. SARAKIS & ASSOCIATES LAW FIRM'S MOTION TO DISMISS

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................................. 1

FACTUAL BACKGROUND .................................................................................................... 1

LEGAL STANDARD ............................................................................................................... 5

ARGUMENT ............................................................................................................................ 6

I.  PLAINTIFF HAS ADEQUATELY STATED A CLAIM AGAINST DEFENDANTS FOR BREACH OF CONTRACT .............................................................................................. 6

A.  The Whistleblower Group Agreement is Not Barred as a Matter of Law..................... 9

B.  Plaintiff is a Third-Party Beneficiary with the Right to Enforce the Whistleblower Group Agreement........................................................................................................11

C.  The Contract Was Not Terminated When Stein Mitchell Withdrew as Counsel ........ 13

D.  Defendants Owe Plaintiff His Share of the Whistleblower Award ............................. 13

E.  Plaintiff's Breach of Contract Claim is Well Within the Statute of Limitations......... 14

II.  PLAINTIFF HAS ADEQUATELY STATED A CLAIM AGAINST DEFENDANTS FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING....... 15

III.  IN THE ALTERNATIVE, PLAINTIFF HAS ADEQUATELY STATED A CLAIM AGAINST DEFENDANTS FOR UNJUST ENRICHMENT ........................................... 16

CONCLUSION....................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Vertex, Inc.*,
  No. 04–CV–1026, 2007 WL 1020788 (D.D.C. Mar. 29, 2007)............................................. 15

*Allworth v. Howard Univ.*,
  890 A.2d 194 (D.C. 2006)...................................................................................................... 15

*Arnold v. Mittman*,
  No. 23–55653, 2024 WL 3519775 (9th Cir. July 24, 2024) .................................................. 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................................. 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................................. 5

*Bregman v. Perles*,
  747 F.3d 873 (D.C. Cir. 2014) ...............................................................................................16

*Cambridge Holdings Grp., Inc. v. Fed. Ins. Co.*,
  357 F.Supp.2d 89 (D.D.C. 2004) .............................................................................................6

*Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*,
  940 A.2d 996 (D.C. 2008).......................................................................................... 6, 14-15

*Fraser v. Gottfried*,
  636 A.2d 430 (D.C.1994) .........................................................................................................7

*Firestone v. Firestone*,
  76 F.3d 1205 (D.C. Cir.1996)…………………………………………………………..18

*Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*,
  944 A.2d 1055 (D.C.2008)…………………………………………………………………17

*Geier v. Conway, Homer & Chin–Caplan, P.C.*,
  983 F.Supp.2d 22 (D.D.C.2013) ..............................................................................................7

*Glasgow v. Camanne Mgmt. Inc.*,
  261 A.3d 208 (D.C. 2021)…………………………………………………………………16

*In re Interbank Funding Corp. Sec. Litig.*,
  629 F.3d 213 (D.C. Cir. 2010) .................................................................................................5

*Jia Di Feng v. See–Lee Lim,*
    786 F. Supp. 2d 96 (D.D.C. 2011) ........................................................6

*Johnston v. Sec. & Exch. Comm'n,*
    49 F.4th 569 (D.C. Cir. 2022) ............................................................10

*Joyce v. L.P. Steuart,*
    227 F.2d 407 (D.C. Cir. 1955) ............................................................13

*Libby v. L. J. Corp.,*
    247 F.2d 78 (1957).............................................................................15

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cheng,*
    697 F.Supp. 1224 (D.D.C.1988) ........................................................15

*Paul v. Howard Univ.,*
    754 A.2d 297 (D.C. 2000) ..................................................................15

*Rosenthal v. Nat'l Produce Co.,*
    573 A.2d 365 (D.C. 1990) ....................................................................6

*Sealift Bulkers, Inc. v. Republic of Armenia,*
    No. 95-1293(PLF), 1996 WL 901091, at *4 (D.D.C. Nov. 22, 1996)....................................12

*Shaffer v. George Washington Univ.,*
    27 F.4th 754, 768 (D.C. Cir. 2022) ....................................................16

*Sickle v. Torres Advanced Enter. Sols., LLC.,*
    884 F.3d 338 (D.C. Cir. 2018) ..............................................................5

*Tsintolas Realty Co. v. Mendez,*
    984 A.2d 181 (D.C. 2009) ....................................................................6

*United States ex rel. Miller v. Bill Harbert Int'l Const., Inc.,*
    505 F.Supp.2d 20 (D.D.C.2007) ..........................................................7

*Washington Inv. Partners of Delaware, LLC,*
    28 A.3d at 578.....................................................................................7

*Wright v. Howard Univ.,*
    60 A.3d 749 (D.C. 2013) ....................................................................14

**Statutes and Rules**

15 U.S.C. § 78u-6 ...................................................................................................................10

Fed. R. Civ. P. 8 .....................................................................................................................16

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................5

Fed R. Civ. P. 15(a) ...............................................................................................................18

## PRELIMINARY STATEMENT

In 2014, Plaintiff and Defendants Pavlos K. Sarakis ("Sarakis") and Pavlos K. Sarakis & Associates Law Firm (the "Sarakis Law Firm" and together with Sarakis, the "Defendants"), joined together to create a whistleblower venture (the "Whistleblower Group") whereby they agreed to investigate and develop a legal action against Novartis AG, Novartis Hellas S.A.C.I., and related entities (collectively "Novartis") concerning the entities' corruption, bribery, and violations of the Foreign Corrupt Practices Act ("FCPA"). Complaint ¶ 2. This joint venture agreement to submit a whistleblower complaint to the government and split any whistleblower award that resulted from their efforts was developed and expressed over a series of contracts between 2014 and 2016. Complaint ¶¶ 3-4. In 2023, Defendants breached this agreement by retaining Plaintiff's portion of the $104 million whistleblower award (the "Whistleblower Award") for themselves. Complaint ¶¶ 5-6, 39, 46, 52-54, 58.

Defendants attempt to mischaracterize the series of agreements and a plan of cooperation for a joint whistleblower venture as a traditional retainer of attorneys for legal services. Such an interpretation misses the mark of the overarching agreement between the parties.

## FACTUAL BACKGROUND

Plaintiff, through his business in the pharmaceutical, hospital, and healthcare industry in Europe, came to learn of large-scale corruption and bribery between Novartis and the government in Greece. Complaint ¶ 16. In 2014, Plaintiff sought a Greek attorney who could help him take action, and contacted Defendants. Complaint ¶ 17. On November 25, 2014, Plaintiff, on behalf of Greystone Ventures,[1] and Defendant Sarakis, on behalf of Defendant the Sarakis Law Firm, created

---

[1]    Plaintiff is the founder and President of Greystone Ventures Group, Inc. ("Greystone Ventures") and Greystone Healthcare Group, Inc. ("Greystone Healthcare").

a joint whistleblower venture (the "Whistleblower Group") and entered into a contract to investigate and develop a legal action concerning Greek pharmaceutical corruption and bribery practices, with Novartis as the main target. Complaint ¶ 18. The contract contained an Action Plan, confidentiality provisions, and a Non-circumvention clause that prevented either party from making agreements or taking unilateral action concerning the contemplated matters without the approval of the other. Complaint ¶ 19.

To strengthen their claims, Plaintiff and Defendant Sarakis identified and onboarded Whistleblower A to the Whistleblower Group. Complaint ¶ 20. Plaintiff and Defendant Sarakis also identified and onboarded Andrew M. Beato ("Beato"), a partner at Stein Mitchell Cipollone Beato & Missner LLP (n/k/a Stein Mitchell Beato & Missner LLP ("Stein Mitchell")), to the Whistleblower Group to serve as U.S. counsel and help the Whistleblower Group bring their FCPA case before the U.S. Securities and Exchange Commission (the "SEC"). Complaint ¶ 21.

On January 21, 2015, Plaintiff, on behalf of Greystone Healthcare, Defendant Sarakis, on behalf of Defendant the Sarakis Law Firm, Mr. Beato, on behalf of Stein Mitchell, and Whistleblower A, as Executive, entered into a contract concerning the collective prosecution of an FCPA whistleblower action against Novartis. Complaint ¶ 22. Therein, the parties codified their "Clients' Agreement" as an agreement, independent of legal representation, to split any contingent award that resulted from the contemplated whistleblower action, after attorneys' fees. Complaint ¶ 23.

On July 8, 2015, Plaintiff, on behalf of Greystone Healthcare, Defendant Sarakis, on behalf of Defendant the Sarakis Law Firm, Mr. Beato, on behalf of Stein Mitchell, and Whistleblower A, as Executive, agreed to an extension of the exclusive period defined in the January 21, 2015 contract, but otherwise affirmed the other terms and conditions of the agreement—including, *inter*

2

*alia*, the Clients' Agreement. Complaint ¶ 24. Thereafter, the Whistleblower Group continued to work together to build their FCPA case against Novartis. Complaint ¶ 25.

As the founder and leader of the Whistleblower Group, Plaintiff was essential in the inception and the development of this Novartis FCPA action. Complaint ¶ 26. Through his knowledge and expertise in the European healthcare industry, Plaintiff oversaw the identification and recruitment of additional primary witnesses to help fortify the factual allegations of the case with first-hand knowledge and documents, including Whistleblowers A, B, and C. *Id*.

On May 4, 2016, after successfully onboarding Whistleblower B to the Whistleblower Group, Plaintiff, on behalf of Greystone Healthcare, Defendant Sarakis, on behalf of Defendant the Sarakis Law Firm, Mr. Beato, on behalf of Stein Mitchell, Whistleblower A, and Whistleblower B entered into a renewed agreement to contractually incorporate Whistleblower B into their joint venture. Complaint ¶ 27. The new agreement still contained an independent Clients' Agreement on fee sharing, but defined everyone's share in terms of a total percentage of the potential whistleblower award so that:

- Stein Mitchell would receive 35%;
- The Sarakis Law Firm would receive 24%;
- Plaintiff would receive 15%;
- Whistleblower A would receive 13%; and
- Whistleblower B would receive 13%.

Complaint ¶ 28.

Similarly, on May 13, 2016, after successfully onboarding Whistleblower C to the Whistleblower Group, Plaintiff, on behalf of Greystone Healthcare, Defendant Sarakis, on behalf of Defendant the Sarakis Law Firm, Mr. Beato, on behalf of Stein Mitchell, Whistleblower A, Whistleblower B, and Whistleblower C entered into an updated agreement to contractually incorporate Whistleblower C into their venture. Complaint ¶ 29. The new agreement still contained

an independent Clients' Agreement on fee sharing and defined everyone's share in terms of a total

percentage of the potential whistleblower award, but altered the split so that:

- Stein Mitchell would receive 35%;
- The Sarakis Law Firm would receive 24%;
- Plaintiff would receive 15%;
- Whistleblower A would receive 8%;
- Whistleblower B would receive 10%; and
- Whistleblower C would receive 8%

Complaint ¶ 30.

For the next few months, the Whistleblower Group continued to work together and develop

the Novartis FCPA case. Complaint ¶ 31. Plaintiff served and upheld his position as a consultant

to the case and helped coordinate the group's efforts. *Id*.

On August 12, 2016, Stein Mitchell completed and filed the Whistleblower Group's TCR

with the SEC that eventually led to the successful prosecution of the Novartis FCPA actions and

the payment of the Whistleblower Award. Complaint ¶ 32. Unfortunately, shortly after filing the

TCR, Stein Mitchell reached irreconcilable differences with Whistleblowers A, B, and C

concerning legal strategy and decided to withdraw from the Whistleblower Group and forfeit any

portion of the Whistleblower Award. Complaint ¶ 33. However, since the clients' agreement to

split the Whistleblower Award was made independent of Stein Mitchell's legal representation, the

group fee split was still in effect. *Id*.

Following Stein Mitchell's withdrawal, Plaintiff made it clear to the remaining

Whistleblower Group that he was not withdrawing from the Whistleblower Group or the case.

Complaint ¶ 34. Thereafter, the Whistleblower Group hired new U.S. counsel, Kohn, Kohn &

Colapinto LLP ("KKC"), to continue prosecuting the Whistleblower Group's Novartis FCPA

action. Complaint ¶ 35.

On June 25, 2020, the SEC and DOJ announced massive settlements of $345 million to resolve the Novartis FCPA matters. Complaint ¶ 36. That same day, KKC published an article on their website identifying themselves as United States counsel for the Whistleblower Group. Complaint ¶ 37. On August 4, 2023, the SEC announced it was providing $104 million as the Whistleblower Award. Complaint ¶ 38. After the announcement of the Whistleblower Award, Plaintiff made numerous efforts to reach out to the other members of the Whistleblower Group, including Defendants, and collect his duly owed portion of the Whistleblower Award, but was unsuccessful in his attempts to enforce his rights and avoid litigation. Complaint ¶ 39.

Plaintiff brings this action seeking damages resulting from Defendants' breach of contract, breach of the implied covenant of good faith and fair dealing, or, alternatively, unjust enrichment.

## **LEGAL STANDARD**

When considering a motion to dismiss under FRCP 12(b)(6), the Court views the complaint in the light most favorable to the Plaintiff, accepts all well-pleaded facts as true, and draws reasonable inferences in the Plaintiff' favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[2] To survive, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010). The court considers the complaint in its entirety, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and construes it liberally, granting plaintiffs the benefit of all inferences that can reasonably be derived from the facts alleged. *See Sickle v. Torres Advanced Enter. Sols., LLC.*, 884 F.3d 338, 345 (D.C. Cir. 2018).

---

[2]     All internal quotations and citations have been omitted unless otherwise noted.

Plaintiff has plausibly alleged his claims and Defendant's motion to dismiss should be denied.

## ARGUMENT

### I.    PLAINTIFF HAS ADEQUATELY STATED A CLAIM AGAINST DEFENDANTS FOR BREACH OF CONTRACT

To prevail on a breach of contract claim in the District of Columbia, "a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009); *see also Jia Di Feng v. See–Lee Lim*, 786 F. Supp. 2d 96, 104 (D.D.C. 2011). "[F]or an enforceable agreement to exist ... there must be both (1) agreement as to all material terms and (2) intention of the parties to be bound." *Cambridge Holdings Grp., Inc. v. Fed. Ins. Co.*, 357 F.Supp.2d 89, 94 (D.D.C. 2004). The "material terms" of a contract include subject matter, price, payment terms, quantity, quality, and duration. *Rosenthal v. Nat'l Produce Co.*, 573 A.2d 365, 370 (D.C. 1990). While all agreements have some degree of indefiniteness and uncertainty, the terms of the contract must be "clear enough for the court to determine whether a breach has occurred and to identify an appropriate remedy." *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1002 (D.C. 2008).

Here, Plaintiff alleges that he and the Defendants formed an agreement to organize and effectuate the Whistleblower Group to prosecute claims against Novartis. The May 13, 2016 Whistleblower Group Agreement was the latest in a series of contracts and specified the material terms of the agreement—what each parties' split of the Whistleblower Award would be. Defendants breached the agreement when they collected Plaintiff's portion of the Whistleblower Award instead of paying it to Plaintiff. This failure of payment constitutes a material breach that

goes to the essence of the agreement between the parties and is so serious as to destroy the essential object of the agreement.

In addition to the written contracts, Complaint Exhibits 1-5, Plaintiff and Defendants had an agreement to form the Whistleblower Group, prosecute Novartis, and share the resulting Whistleblower Award as part of their joint venture. Under District of Columbia law:

> [a] joint venture is an association of persons with intent, by way of express or implied contract, to engage in and carry out a single business venture for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, without creating a partnership or a corporation, pursuant to an agreement that there shall be a community of interest among them as to the purpose of the undertaking, and that each participant shall stand in the relation of principal as well as agent as to each of the other coadventurers, with an equal right of control of the means employed to carry out the common purpose of the venture.

*Geier v. Conway, Homer & Chin–Caplan, P.C.*, 983 F.Supp.2d 22, 34 (D.D.C.2013) (quoting *United States ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 505 F.Supp.2d 20, 30 (D.D.C.2007)).

Despite this somewhat amorphous and wide-ranging definition, in determining whether a joint venture exists, "the fundamental issue is one of intent." *Fraser v. Gottfried*, 636 A.2d 430, 432 (D.C.1994); *see also Washington Inv. Partners of Delaware, LLC*, 28 A.3d at 578 ("[t]he 'intent' element of joint venture is well-established"). More precisely, "a joint venture turns less on the presence or absence of legal essentials than on the intent of the parties gathered from their agreement, conduct, and the circumstances surrounding their transactions." *Washington Inv. Partners of Delaware*, 28 A.3d at 579–80 n. 13.

Plaintiff alleges that the intent of the parties was to collectively prosecute the Novartis FCPA Claims and share the proceeds amongst the Whistleblower Group.[3] Complaint ¶¶ 2-4, 17-

---

[3]    The intent to create a joint venture is further supported by the conduct of the Whistleblower Group, who collectively worked on and submitted a TCR to the SEC concerning Novartis' FCPA violations that led to the $104 million Whistleblower Award.

20, 23. Plaintiff alleges that the portions of each written contract, referred to as the Clients' Agreement, support the existence of a joint plan for the members of the Whistleblower Group to split any contingent award that resulted from their venture, independent of legal representation, and manifested in each of the updated Whistleblower Group agreements on fee splits. Complaint ¶¶ 23, 24, 28, 30, 33. While Defendants raise in their brief the issue of the various contract integration clauses, the text of those provisions apply to "*inconsistent*" negotiations, agreements, and understandings. *See* Exhibit 5 §16 (emphasis added). Plaintiff and Defendants' joint venture for the Whistleblower Group to prosecute FCPA violations against Novartis is exactly in line with, and not inconsistent to, the May 13, 2016 Whistleblower Group Agreement.

In fact, the text of the WHEREAS clauses and terms of the consecutive Whistleblower Group Agreements confirm Plaintiff's role in the joint venture. The January 21, 2015 Whistleblower Group Agreement provides the following introduction to the joint venture:[4]

> WHEREAS, Clients are aware that a major global pharmaceutical company ("Company") operating in Greece and in the United States has violated certain laws such as the Foreign Corrupt Practices Act ("FCPA") and may therefore be liable to one or more agencies of the U.S. government, and

> WHEREAS, Clients contacted Firm for the purpose of conducting an in depth confidential investigation to determine whether sufficient evidence exists to establish a violation of U.S. law, and

> WHEREAS, Firm has informed Clients that if sufficient evidence of the violations exists, it will file a whistleblower claim with the U.S. government against Company, and that such action may result in the Company paying a penalty for the violations, and

> WHEREAS, U.S. laws may entitle a whistleblower to a payment from the U.S. government for providing information concerning Company's violation of U.S. law;

---

[4]    "Clients" are defined in the January 21, 2015 Whistleblower Group Agreement as Greystone Healthcare and Whistleblower A.

Complaint Exhibit 2 at 1. And The January 21, 2015 Whistleblower Group Agreement confirms

the independent Clients Agreement to split the proceeds of any potential whistleblower award:

> **4. Clients' Agreement.**
> Clients independently have agreed that they will share equally the Contingent
> Amount and their signature hereunder confirms such agreement. Specifically,
> Executive and Greystone will each receive an equal share of the Contingent
> Amount, net of the payments they will make to Firm and Sarakis.

Complaint Exhibit 2 at 2. The May 4, 2016 Whistleblower Group Agreement and the May 13,

2016 Whistleblower Group Agreement both provide the same WHEREAS clauses supporting

Plaintiff's role in creating the joint venture:

> WHEREAS, Greystone has expertise in pharmaceutical markets in Europe
> including Greece, it initiated contact with Sarakis concerning the investigation of
> the Greek market and Introduced Firm to Sarakis, and it is a consultant with
> specialized expertise contributing to the subject matter of this Agreement; and
>
> WHEREAS, Greystone Ventures Group, Inc., whose President is Dr. George
> Naskaris, has acted as a consultant concerning the subject matters of this Agreement
> and has contributed consultant services to the parties;

Complaint Exhibit 4 at 2; Complaint Exhibit 5 at 2.

Accordingly, Plaintiff and Defendants were parties to a joint whistleblower venture where

the latest fee split among the Whistleblower Group was codified by the May 13, 2016

Whistleblower Group Agreement. Defendants violated the material terms of that agreement in

2023 when they kept Plaintiff's share of the Whistleblower Award for themselves. Defendants now

attempt to provide several reasons why their breach is excused; however, for the following reasons,

each of Defendants' arguments fail.

### A.  The Whistleblower Group Agreement is Not Barred as a Matter of Law.

First, Defendants incorrectly attempt to shoehorn the entirety of the agreements between

Plaintiff and Defendants into a legal retainer for Stein Mitchell—ginning up a self-serving

argument that Plaintiff is a non-attorney seeking legal fees and that those legal fees are excessive.

9

However, both arguments fail because the agreement between Plaintiff and Defendants is not one solely a retainer for traditional legal services.

The May 13, 2016 Whistleblower Group Agreement was entered into between Stein Mitchell on the one hand and the members of the Whistleblower Group on the other. Complaint Exhibit 5 at 1. The Clients' Agreement of the May 13, 2016 Whistleblower Group Agreement states that "Whistleblower A, B, and C have informed Counsel that they retained independent counsel . . . ." Complaint Exhibit 5 § 4. And the "Updates to Clients" section states that Stein Mitchell will inform "Clients, Sarakis, and Consultant" of progress and attorney action taken. Complaint Exhibit 5 § 21. Thus, the only "attorney's fees" represented in the May 13, 2016 Whistleblower Group Agreement are a 35% contingent amount to Stien Mitchell.

Contracts sharing the proceeds of potential whistleblower awards are allowed under the law. Whistleblower awards are often the result of group efforts between attorneys and non-attorneys, which require the parties to pre-determine the appropriate split of any contingent award amount. The plain language of the SEC's whistleblower statute defines the term whistleblower as "any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws to the Commission." 15 U.S.C. § 78u-6(a)(6). And case law supports the corollary concept that such joint submissions would require the ability to share a whistleblower award. *See Johnston v. Sec. & Exch. Comm'n*, 49 F.4th 569 (D.C. Cir. 2022) (holding that "'whistleblower' could be two or more individuals acting jointly" and an "individual did not need to develop information personally in order to be 'whistleblower'"); *Arnold v. Mittman*, No. 23–55653, 2024 WL 3519775, at *1 (9th Cir. July 24, 2024) ("The [complaint] adequately alleges that the parties agreed that any whistleblower award would be equitably distributed according to the "get out what you put in" principle, with specific values to be determined at a later time. The

FAC also adequately alleges that the parties had a history of operating pursuant to this agreement. The absence of a formula for splitting the legal fees in case of no award does not undermine that inference.").

Moreover, the risks to professional conduct and public policy identified by Defendants, Def. Br. at 10, are wholly inapposite to a whistleblower case. In a whistleblower case, those with knowledge and information about possible wrongdoing come forward and present their information to the government. If that information leads to a financial recovery by the government, then the whistleblowers are allowed to share in that recovery. Accordingly, there is never a need for members of a whistleblower group to decide whether to settle faster or hold out for more, because plenary litigation and the power to decide the appropriate resolution of any case belongs to the government. Thus, whether attorneys or non-attorneys decide the best method of sharing a potential whistleblower award is a business decision that encapsulates the work done by parties and the most strategic ways to proceed and is not a question of law or ethics.

Given the inherent nature of cooperation to a whistleblower case and the inclusion of joint actors in the definition of whistleblower, it would make sense that a pre-determined split by a whistleblower group of any potential award would serve public policy and public interest, because, if followed, such agreements would prevent the need for post-hac adjudication. Accordingly, whistleblower award agreements, such as the May 13, 2016 Whistleblower Group Agreement, are legal and enforceable.

**B. Plaintiff is a Third-Party Beneficiary with the Right to Enforce the Whistleblower Group Agreement.**

Second, Defendants argue that Plaintiff has no cause of action because he was not a named party in the May 13, 2016 Whistleblower Group Agreement. This argument overlooks several

facts, including that Plaintiff is a named third-party beneficiary in the May 13, 2016 Whistleblower Group Agreement.

"A third party beneficiary of a contract may bring an action against the principal parties to that contract only when the parties to the contract intended to create and did create enforceable contract rights in the third party." *Sealift Bulkers, Inc. v. Republic of Armenia*, No. 95-1293(PLF), 1996 WL 901091, at *4 (D.D.C. Nov. 22, 1996). In order for a plaintiff party to be an intended third party beneficiary of the contract with a defendant, the contract must have expressed an intent directly and specifically to benefit that party and provide them the right to obtain compensation from the defendant. *Id.*

Plaintiff is the founder and President of Greystone Healthcare and Greystone Ventures. Plaintiff is the signatory for Greystone Healthcare in the May 13, 2016 Whistleblower Group Agreement. A whereas clause of the May 13, 2016 Whistleblower Group Agreement references Plaintiff by name: "WHEREAS, Greystone Ventures Group, Inc, whose President is Dr. George Naskaris, has acted as a consultant concerning the subject matters of this Agreement and has contributed consultant services to the parties[.]" Complaint Exhibit 5 at 2.

Most importantly, Section 22 of the May 13, 2016 Whistleblower Group Agreement directly and specifically expresses an intent to provide Plaintiff the right to enforce the contract:

22. Assignment of Rights under this Agreement.

Greystone, at the sole discretion of its President, George N. Naskaris, Ph.D., reserves the unconditional right to assign any and all of its rights under this Agreement at any time to (i) Accountability International, Inc., (ii) Dr. Naskaris, or (iii) any other person or legal entity (collectively "Other Party"). In such case, the Other Party will unconditionally replace Greystone for all intents and purposes under this Agreement and shall have the same rights as those afforded to Greystone.

Complaint Exhibit 5 at 8.

Therefore, Plaintiff's Complaint cannot be dismissed on the basis that he has no right to enforce the contract.

### C.  The Contract Was Not Terminated When Stein Mitchell Withdrew as Counsel

Third, Defendants argue that the agreement between the parties was breached when Stein Mitchell withdrew as U.S. counsel. However, Stein Mitchell played a small role in the overall venture of the Whistleblower Group. The Clients' Agreement to share any contingent whistleblower award existed outside of the identity of the chosen U.S. counsel. Complaint at ¶ 23. If another attorney, such as KKC, were to step into the role of U.S. counsel, then they would be entitled to the same 35% fee split and the Whistleblower Group would go forward unaffected. And that is exactly what happened.

Defendants' reliance on *Joyce v. L.P. Steuart*, is misplaced. In *Joyce*, the only two parties to an agreement executed a separate agreement expressly terminating any and all agreements, verbal or written, between the parties. 227 F.2d 407, 408 (D.C. Cir. 1955). Here, the Whistleblower Group's agreement to split the Whistleblower Award was made independent of Stein Mitchell's legal representation. Complaint ¶ 33. After Stein Mitchell withdrew, the fee split was still in effect and Plaintiff expressly informed the Whistleblower Group that he intended to stay onboard. Complaint ¶¶ 33-34.

Accordingly, the agreement between Plaintiff and Defendants to organize and effectuate a Whistleblower Group venture to prosecute violations of law by Novartis and split the resulting Whistleblower Award was not breached by Stein Mitchell's withdrawal.

### D.  Defendants Owe Plaintiff His Share of the Whistleblower Award

Defendants agreed to split the Whistleblower Group's Whistleblower Award based on the percentages assigned in the May 13, 2016 Whistleblower Group Agreement. Defendants breached

their agreement when, as Plaintiff alleges, they decided to keep Plaintiff's portion of the Whistleblower Award for themselves. Complaint ¶¶ 6, 39, 46, 52-54, 58. While Individual Defendant Sarakis was not a named party in the May 13, 2016 Whistleblower Group Agreement, he was a party to the joint venture of the Whistleblower Group.

Accordingly, Defendants are liable to Plaintiff for the breach of their agreement that resulted in damages to Plaintiff.

### E.  Plaintiff's Breach of Contract Claim is Well Within the Statute of Limitations

The District of Columbia's statute of limitations provides that actions on a contract "may not be brought" more than three years "from the time the right to maintain the action accrues." D.C. Code § 12–301(7). A breach of contract occurs when a party "fails to perform when performance is due." *Eastbanc*, 940 A.2d at 1004. The limitations period, in turn, begins to run "at the time of the breach." *Wright v. Howard Univ.*, 60 A.3d 749, 751 (D.C. 2013).

Here, the Defendants' breach of their agreement with Plaintiff occurred when payment of the Whistleblower Award came due in August 2023. Payment was due at that point and instead of sharing the Whistleblower Award with Plaintiff, Defendants kept it for themselves. Plaintiff filed his complaint in December 2024, well within the three-year statutory period.

Defendants' argument that the breach of contract occurred when KKC replaced Stein Mitchell as U.S. Counsel at some point between August 12, 2016 and June 25, 2020 (Def. Br. At 17), misses the mark for several reasons. First, Defendants present no evidence that they informed Plaintiff of their intent to breach their agreement during this time period. Given that the material terms of the agreement were for the split of the Whistleblower Award, it would still be entirely possible for Defendants to comply with the intent of the Whistleblower Group to split the Whistleblower Award. Second, even if the 2020 KKC article could serve as some form of notice

to Plaintiff of repudiation (it cannot), "there is a crucial difference between repudiating a contract and breaching it." *Eastbanc*, 940 A.2d at 1006. An "actual breach" is required to start running the statute-of-limitations clock, regardless of the plaintiff's "knowledge of a repudiation" before the breach. *See id*. at 1007–08. Here, an actual breach would have required Defendants to keep Plaintiff's share of the Whistleblower Award for themselves, which they eventually did in 2023.

Therefore, Plaintiff's claims are timely and should not be dismissed.

## II.    PLAINTIFF HAS ADEQUATELY STATED A CLAIM AGAINST DEFENDANTS FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

"The relationship of joint adventurers gives rise to certain reasonably well-defined fiduciary duties and obligations. The duty imposed is essentially one of good faith, fair and open dealing and the utmost of candor and disclosure . . . ." *Libby v. L. J. Corp.*, 247 F.2d 78, 81 (1957). Additionally, in the District of Columbia, "all contracts contain an implied duty of good faith and fair dealing, which means that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006) (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000)).

A breach of the duty of good faith and fair dealing occurs when a party (1) evades the spirit of the contract, (2) willfully renders imperfect performance, or (3) interferes with performance by the other party. *Id*. Whether the parties were acting within the scope of the fiduciary relationship is a question of fact for the jury to decide, not a question of law for the court. *See Adams v. Vertex, Inc.*, No. 04–CV–1026, 2007 WL 1020788, at *6 (D.D.C. Mar. 29, 2007); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cheng*, 697 F.Supp. 1224, 1226 (D.D.C.1988).

Here, Defendants clearly breached their duties by accepting their portion of the Whistleblower Award and not paying Plaintiff his duly owed portion of the Whistleblower Award. Defendants were members of the joint Whistleblower Group venture and agreed to split the Whistleblower Award as stated in the May 13, 2016 Whistleblower Group Agreement. By cutting Plaintiff out of the split of the Whistleblower Award, Defendants evaded the spirit of their agreement and willfully rendered performance of the agreement impossible.

Therefore, Plaintiff has adequately pleaded a cause of action against Defendants for breach of implied covenant of good faith and fair dealing.

## III.    IN THE ALTERNATIVE, PLAINTIFF HAS ADEQUATELY STATED A CLAIM AGAINST DEFENDANTS FOR UNJUST ENRICHMENT

In contract cases, where the nature and enforceability of any promises Defendants made remain unresolved, Plaintiff's alternative claims for unjust enrichment may proceed past the pleadings stage. *Shaffer v. George Washington Univ.*, 27 F.4th 754, 768 (D.C. Cir. 2022) (allowing both breach of contract and unjust enrichment claims to proceed at the pleadings stage). "The Federal Rules of Civil Procedure expressly allow parties to advance inconsistent and alternative theories of recovery at the pleadings stage. *See* Fed. R. Civ. P. 8(a)(3)." *Id*. In the event the trier of fact finds that no enforceable contract concerning the split of the Whistleblower Award existed at the time Defendants received the Whistleblower Award, Plaintiff's Complaint plainly meets the elements for an unjust enrichment claim.

Unjust enrichment occurs "when a person retains a benefit (usually money) which in justice and equity belongs to another." *Glasgow v. Camanne Mgmt. Inc.*, 261 A.3d 208, 215 (D.C. 2021). To state a claim for unjust enrichment, a plaintiff must allege: (1) that they conferred a benefit on Defendants; (2) that Defendants retained the benefit; and that (3) under the circumstances, Defendants' retention of the benefit is unjust. *Bregman v. Perles*, 747 F.3d 873, 876 (D.C. Cir.

2014); *see also Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1076 (D.C. 2008).

Plaintiff is the originator of the Whistleblower Group. Plaintiff conferred a benefit upon Defendants by founding and assembling the Whistleblower Group, identifying and onboarding whistleblowers, finding, introducing, and retaining U.S. counsel for the Whistleblower Group that drafted and filed the TCR complaint which led to the Whistleblower Award, and providing industry expertise and contributing to the development of the Novartis TCR complaint. Complaint ¶ 57.

Defendants retained the benefit of Plaintiff's actions by keeping Plaintiff's portion of the Whistleblower Award for themselves. Complaint ¶ 58. Defendants ignored and/or denied Plaintiff's numerous attempts to collect his duly owed portion of the Whistleblower Award. Complaint ¶ 59. Defendants' retention of the Whistleblower Award and failure to pay Plaintiff his portion duly owed is unjust. No whistleblower group would exist, but for the actions of Plaintiff. No FCPA TCR complaint would have been filed against Novartis, but for the actions of Plaintiff. Defendants would never have received any Whistleblower Award money, but for the actions of Plaintiff.

Defendants' argument that Plaintiff's quasi-contractual rights violate the law or somehow against public policy is incorrect for the reasons stated above. *See supra* Part I.A.1. Agreements to split whistleblower awards are legal contracts and serve a positive public function.[5]

---

[5]    Indeed, in issuing whistleblower awards, the SEC will honor joint whistleblower agreements to split fees when the joint whistleblower groups are represented by the same counsel. *See* Order Determining Whistleblower Award Claim (April 21, 2025) available at: https://www.sec.gov/files/rules/other/2025/34-102896.pdf; Order Determining Whistleblower Award Claims (October 10, 2024) available at: https://www.sec.gov/files/rules/other/2024/34-101299.pdf.

Accordingly, Plaintiff has adequately pleaded a cause of action against Defendants for unjust enrichment, and equity and good conscience require that Defendants pay restitution to Plaintiff.

## **CONCLUSION**

For all these reasons, Plaintiff has plausibly stated a claim for relief on each of his alleged causes of action and Defendants' motion to dismiss Plaintiff's Complaint should be denied. Should the Court find any of Plaintiff's causes of action against either Defendant need re-pleading, Plaintiff respectfully requests the Court grant him leave to amend those counts under Rule 15(a). *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) ("Leave to amend a complaint under Rule 15(a) shall be freely given when justice so requires.").


Dated: June 16, 2025                                    Respectfully submitted,

**OF COUNSEL**                                          */s/ Lawrence A. Katz*
                                                        Lawrence A. Katz
**HACH ROSE SCHIRRIPA**                                 **LENTO LAW GROUP, P.C.**
**& CHEVERIE, LLP**                                     1814 RT 70 STE 321
Frank R. Schirripa                                      Cherry Hill, NJ 08003
John W. Baylet                                          P: (856) 652-2000 EXT 497
112 Madison Avenue, 10th Floor                          F: (856) 375-1010
New York, New York 10016                                lakatz@lentolawgroup.com
Tel: 212-213-8311
fschirripa@hrsclaw.com
jbaylet@hrsclaw.com                                     *Attorneys for Plaintiff*

*Attorneys for Plaintiff*